[L. A. No. 29440.   In Bank.   Oct. 26, 1967.]

VIVIAN WALKER, Plaintiff and Appellant, v. OCCI-
DENTAL LIFE INSURANCE COMPANY, Defendant
and Respondent.

Allan F. Grossman for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and John L. Endicott for Defendant and Respondent.

Chandler P. Ward as Amicus Curiae on behalf of Defendant and Respondent.

MOSK, J.—Plaintiff, Vivian Walker, brought this action as beneficiary to collect the proceeds of two life insurance policies issued to her deceased husband, Harry V. Walker. Decedent had been an employee of the Bank of America (hereinafter called the bank), which was the policyholder of two group insurance policies issued by defendant. The policies and the certificates issued thereunder provided that the coverage of an employee terminated with his employment but that he had the option, within 31 days after termination, to obtain an individual policy from defendant without evidence of insurability in an amount not exceeding the face value of the group policies. This conversion option must be inserted in every group policy by virtue of the provisions of section 10209 of the Insurance Code.[1]

---

[1]Section 10209 of the Insurance Code, with exceptions not relevant here, requires that the policy shall contain a provision that the insurer

Walker was suspended from his position on April 14, 1961, and on November 13 of that year he applied to convert a portion of the coverage under one of the policies. His application was rejected by defendant on the ground that it was submitted more than 31 days after his employment with the bank had terminated. Walker died shortly thereafter, and his widow brought this action, contending that she was entitled to the face value of the policies less the amount of premiums which would have been due from the time of the conversion application to Walker's death. The trial court, sitting without a jury, found in defendant's favor and entered judgment accordingly.

The primary problem posed here is whether the existence of a 31-day conversion option implies a duty on the part of the insurer to give notice to an employee that his employment has been terminated.

Harry Walker was employed by the bank from 1924 until sometime in 1961. In 1936 he applied for and was issued insurance under the bank's group insurance policy in a sum which ultimately amounted to $20,000, and thereafter his share of the premiums for the policy was deducted from his salary. The master policy provided that the insurance of an employee would cease upon termination of his employment, as shown by the employer's records. The certificate issued to Walker provided, as we have seen, that a person whose employment was terminated was entitled to obtain an individual policy in an amount not exceeding the face value of the group policy, if he applied to defendant within 31 days after termination and paid the appropriate premium. A second policy for an additional $2,000 and the certificate issued thereunder contained substantially the same provisions.

The master policy was administered by the employer. The bank deducted the employee's share of the premiums from his wages, maintained most of the insurance records, and inquiries about various aspects of the insurance were referred by defendant to the bank.

On April 14, 1961, Walker was notified orally that he was

---

will issue to the employer for delivery to the insured employee an individual certificate setting forth ''(b) A provision that if the employment terminates for any reason whatsoever and the employee applies to the insurer within 31 days after such termination, paying the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, he is entitled, without producing evidence of insurability, to the issue by the insurer of any individual life policy in any one of the forms, other than term insurance, customarily issued by the insurer.''

suspended from his position as the manager of one of defendant's branches. Under the usual procedure in such circumstances, a committee of the bank was convened to investigate the causes for Walker's suspension and to determine a final course of action with regard to his employment. It decided to terminate Walker's association with the bank and. on May 18, 1961, he was sent a letter stating, "This is to inform you that your suspension as an officer of this bank effective April 14, 1961, has been made permanent, and that your employment has been terminated for cause *as of that date.*" (Italics added.) This letter was returned to the bank as undeliverable, was readdressed, and finally received by Walker on June 20. The personnel records of the bank initially indicated that Walker's employment ended on April 14, but that date was crossed out and "6-22-61" later inserted as the termination date.

In the summer and autumn of 1961 Walker's attorney and representatives of the bank exchanged a number of letters and met personally to discuss various benefits to which Walker claimed he was entitled by virtue of his period of employment with the bank. These negotiations were primarily involved with Walker's retirement benefits and his rights under the bank's family estate plan, but there was some correspondence with both the bank and defendant relating to Walker's conversion rights under the group insurance policies.[2]

On November 13, Walker entered into a final settlement with the bank, in consequence of which he executed a document releasing the bank and its agents from any claims he had arising out of his employment or the termination of his employment. The document was sent to him by the bank for his signature and was accompanied by a letter from the bank enclosing certain other papers for his signature, including an application for conversion of group life insurance. The letter indicated that defendant might refuse to permit conversion "at this late date" but that the bank would submit the application to defendant "to see what their reaction is."

In the application, which Walker signed and forwarded

[2]The bank wrote Walker's attorney in August that Walker would be entitled to convert his group insurance policies "within 31 days." The attorney also contacted defendant directly regarding his client's insurance rights, and defendant replied on August 9 that the bank would be best qualified to advise him regarding this matter but that, generally speaking, life insurance could be converted "within a 31-day period" in case of termination.

to the bank on November 13, he requested conversion of only $10,000 of the $20,000 policy and did not seek to convert the $2,000 policy. On the reverse side of the application, which was to be filled in by the employer, the bank indicated that as of June 22, 1961, Walker ceased to be insured under the group policy for which conversion was sought. On November 27, defendant informed Walker that the application could not be accepted because it was submitted more than 31 days after the termination of his insurance which, according to the bank's records, occurred on June 22, 1961. Walker died a few weeks after he received this notice.

The trial court found that Walker's employment was terminated on June 22, 1961, that the application for conversion was not timely because it was made more than 31 days thereafter, and that defendant had properly exercised its right of rejection. The court also found that the bank was not the agent of defendant for the administration of the group policy, that defendant was not bound by the bank's administrative acts, and that defendant had no duty to give Walker notice that his employment was terminated.

We need not discuss the issue of agency, since in *Elfstrom* v. *New York Life Ins. Co., ante,* p. 503 [63 Cal. Rptr. 35, 432 P.2d 731], we held that generally the employer is the agent of the insurer in the administration of group insurance policies. Thus the primary problem we must decide is whether the insurer is required to give an employee notice of the termination of his employment either directly or through its employer-agent.

We answer this question in the affirmative. There is no controlling authority on the issue in California, but the majority of jurisdictions hold, under similar policy provisions, that the employee is entitled to receive notice that the employer has terminated their relationship. (*Shears* v. *All States Life Ins. Co.* (1942) 242 Ala. 249 [5 So.2d 808, 814]; *Emerick* v. *Connecticut General Life Ins. Co.* (1935) 120 Conn. 60 [179 A. 335, 337-338, 105 A.L.R. 413]; *Leavens* v. *Metropolitan Life Ins. Co.* (1938) 135 Me. 365 [197 A. 309, 311]; *Geisenhoff* v. *John Hancock Mut. Life Ins. Co.* (1941) 209 Minn. 223 [296 N.W. 4, 6-7]; *Nick* v. *Travelers Ins. Co.* (1945) 354 Mo. 376 [189 S.W.2d 532, 537-538]; *Jones* v. *Metropolitan Life Ins. Co.* (1944) 156 Pa.Super. 156 [39 A.2d 721, 725]; cf. *Kolodziej* v. *Metropolitan Life Ins. Co.* (1940) 307 Ill. App. 657 [30 N.E.2d 916, 919]; *John Hancock Mut. Life Ins. Co.* v. *Pappageorgu* (1940) 107 Ind.App. 327 [24 N.E.2d

428, 431].) The rationale of these decisions is that the privilege of converting the policy regardless of an employee's physical condition is a valuable property right, that it would be inequitable to hold that an employee may be deprived of this right without his knowledge at the whim of the employer, and that the inclusion of such a clause in the policy implies an intention that the employee should have knowledge of the precise date of termination of his employment.

The cases representing the minority view, at least one of which acknowledges the unfairness to an insured employee resulting from its decision (*Szymanski* v. *John Hancock Mut. Life Ins. Co.* (1943) 304 Mich. 483 [8 N.W.2d 146, 149, 145 A.L.R. 947]), reason generally that, in the absence of a statutory or contractual provision specifying that notice is required, the courts cannot judicially insert such a provision into the contract. (*Metropolitan Life Ins. Co.* v. *Thompson* (1942) 203 Ark. 1103 [160 S.W.2d 852, 854-855]; *Colter* v. *Travelers Ins. Co.* (1930) 270 Mass. 424 [170 N.E. 407, 409]; *Hanaieff* v. *Equitable Life Assur. Soc. of United States* (1952) 371 Pa. 560 [92 A.2d 202, 204-205]; cf. *Klat* v. *Chrysler Corp.* (1938) 285 Mich. 241 [280 N.W. 747, 750]; *Adkins* v. *Aetna Life Ins. Co.* (1947) 130 W.Va. 362 [43 S.E.2d 372].)

Our Civil Code provides that "Stipulations which are necessary to make a contract reasonable . . . are implied. . . ." (Civ. Code, § 1655.) It is evident that the privilege of converting a group policy to a policy of individual insurance within 31 days after termination of employment would be of dubious value if an employee was not entitled to be notified when the employer had effected a termination.[3] Absent a requirement of notification in the instant case, Walker, who had paid premiums to defendant for 25 years on his group insurance policy with the assurance that if his employment were terminated by the bank he could convert to a policy of individual insurance without evidence of insurability, would be deprived of this privilege simply because the bank, without unequivocal notice to him, unilaterally chose to regard the employment relationship terminated on a particular date. We therefore hold that notice

---

[3] It is no answer to this view to state that an employee must know whether and when his employer has ended their relationship. The myriad of cases dealing with this question under a provision such as that involved here testifies to the difficulty of resolving the issue. (See cases collected in 68 A.L.R.2d 8, 26-27, 40-72, 132-140.)

of termination is essential in order to render viable the conversion privilege contained in the certificate issued by defendant.

We are not persuaded by defendant's contention that because the master policy provides that an employee's insurance shall cease upon the termination date "as shown by the Employer's records" plaintiff is bound by June 22, 1961, as the date of termination. The primary responsibility for giving notice of termination rests with the defendant, which issued the certificate to Walker setting forth the conversion privilege and which accepted premiums paid in reliance upon that right for 25 years. Defendant could, of course, delegate this task to the bank as it did other administrative duties in connection with the policy, but it cannot avoid the responsibility for notification simply by routine reliance on a bookkeeping entry in the employer's records.

Here, as we have seen, the bank notified Walker on or about June 22 that his employment had been retroactively terminated as of April 14, although originally on April 14 he had merely been suspended, and its records showed June 22, 1961, as the date of termination. If the right to receive notification of termination is to be meaningful, it must provide such notice as will entitle an employee to 31 days within which to exercise his conversion option. The purported notice given on June 22 that termination had occurred more than two months previously was ineffective insofar as Walker's rights under the certificate were concerned. The certificate, as provided by section 10209 of the Insurance Code, stated that the employee may convert to a policy of individual insurance within 31 days after the termination of his employment, not within 31 days after notice of termination. Thus, the suggestion that Walker was imprudent in failing to apply for conversion within 31 days after the June 22 notice cannot prevail. Indeed, his application then would have been a futile act in view of the purported retroactive dismissal relating back to April 14.

It is plaintiff's contention that under these unusual circumstances termination of Walker's employment, insofar as insurance conversion was concerned, did not occur until November 13, 1961, when all of his fringe rights as an employee of the bank were finally resolved by mutual agreement. While Walker was admittedly aware several months prior to November 13 that he would no longer remain an

employee of the bank, he was justified in concluding that the retroactive termination notice was ineffective in its relation to his rights under the group insurance policy, particularly since his attorney and representatives of the bank conducted negotiations until November 13 with regard to various benefits arising from his employment. That Walker considered this to be the ultimate termination date referred to in the certificate and that he deemed the November 13 agreement to constitute effective notice of such termination is evident since he promptly signed the application to convert $10,000 in insurance on that date at the same time that he executed a release and other documents sent to him by the bank. We conclude, therefore, that "termination of employment" as used in the certificate occurred on November 13, 1961, that Walker's application for conversion on that date was timely, and that defendant acted improperly in rejecting it.

Plaintiff contends that she is entitled to the entire $22,000 face value of the two policies even though Walker applied to convert only $10,000 of the larger policy. She asserts that Walker was entitled to a full 31 days from November 13 in which to decide whether to convert either of his policies and to choose amounts up to their face value and that he might have desired to convert the remaining $12,000 but that any application by him to do so would have been a futile act because of defendant's rejection of his application to convert the lesser amount.

Defendant's only duty under the certificate was to issue a policy, upon application, in the amount sought. There is no evidence or any claim that Walker in fact desired more than $10,000 in insurance or that he intended to exercise his conversion option more than once within the 31-day period. To hold that defendant breached a duty to issue $22,000 worth of insurance under these circumstances would penalize it for notifying Walker promptly that his application had been rejected. We find no justification here for the imposition of sanctions.[4]

___

[4]Plaintiff makes the related argument that if we hold that defendant did *not* have a duty to notify Walker of the termination of his employment, and Walker did not receive effective notice of termination, she would be entitled to recover the entire $22,000 because the condition precedent of Walker's making application for conversion would have been excused and defendant would have been under a duty to issue the policies without any application by him. It is not necessary to consider this contention in view of the conclusions reached above that defendant was under a duty to notify Walker of the termination of his employment, that this duty was not complied with by the retroactive termination

Finally, defendant asserts that if we conclude the bank was acting as its agent, the release given to the bank on November 13 by Walker also released any liability defendant might have as principal, under the rule that the release of an agent for liability in tort also releases the master. We need not determine the dubious applicability of this rule to the present case since we hold that "termination of employment" within the meaning of the conversion clause occurred on November 13, 1961, and that, as so viewed, Walker's application for conversion was timely.

The judgment is reversed and the trial court is directed to enter judgment for plaintiff in the amount of $10,000, less the amount of insurance premiums which would have been due if defendant had not improperly rejected Walker's application for partial conversion of one of his group insurance policies, plus interest of 7 percent per annum from January 26, 1962. (Civ. Code, § 3287.)

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied November 22, 1967, and the judgment was modified to read as printed above.

letter, and that under all the circumstances the termination of Walker's employment within the meaning of the certificate occurred on November 13, 1961, the date upon which he assumed such termination had occurred.