323 So.2d 17 (1975)
Johnny L. DENTON, Appellant,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Keller Industries, Inc., Appellees.
No. X-375.
District Court of Appeal of Florida, First District.
December 3, 1975.
*19 R.K. Roberson, DeLand, for appellant.
R. David Ayers, Jr. and Janis M. Halker, Orlando, for appellee Connecticut General Life Ins. Co.
Patricia C. Fawsett, Orlando, for appellee Keller Ind., Inc.
SMITH, Judge.
Plaintiff appeals from final judgments entered for the two defendants in this action concerning $5,000 in life insurance benefits provided by an employees' group policy issued by defendant Connecticut General Life Insurance Company to defendant Keller Industries, Inc. Keller employed Thomas Denton, plaintiff's father, until seven weeks before he died of cancer on July 28, 1972. The trial judge held that Denton's insurance coverage ended no later than July 1 and entered summary judgment for Connecticut General. The court also finally dismissed plaintiff's action against Keller because of the insufficiency of plaintiff's fourth amended complaint, asserting Keller's liability for failing to remit insurance premiums on June 1, 1972, or for otherwise cancelling Denton's insurance, and for failing to advise Denton of the change in his insurance status and of the availability of conversion privileges upon the cessation of his employment.
By its group policy furnished to Keller, Connecticut General required Keller to remit, on the first day of each month, a premium calculated by multiplying a stated rate times the number of employees insured on that date. The policy also required Keller's employees to contribute unspecified amounts toward the cost of the insurance through wage withholdings authorized by payroll deduction orders. Keller withheld $2.28 from Denton's wages each weekly payday for that purpose and remitted the accumulated contributions *20 from him and all employees, together with whatever additional amount Keller paid to make up the total premium, on or before the first day of each month.
Denton, a 61 year-old laborer at Keller's cabinetmaking facility in DeLand, was evidently totally disabled by cancer continuously after May 15, 1972, his last day at work. His last weekly wages were paid on Friday, May 19, when Keller withheld, for the third time in May, $2.28 for Denton's insurance. Keller remitted those May withholdings to Connecticut General before June 1 as part of a single gross premium due that date for insurance covering all insured employees. On June 9, Keller's manager filled out a personnel and payroll change card which recorded the termination of Denton's employment effective that date "due to health reasons." At a time not shown by the evidence, an unidentified Keller employee marked on Denton's group insurance and record card that Denton's insurance terminated on June 9, 1972. Denton died on July 28. Claim was made for the death benefits, which Connecticut General denied on grounds that Denton's employment and his insurance terminated before his death.
The group policy held by Keller and the certificate of insurance issued to Denton provide for automatic termination of the employee's insurance on the earliest of four dates, of which three are pertinent:
"1. the date the Employee ceases to be in a Class of Eligible Employees or ceases to qualify as an Employee;
"2. the last day of the period for which the Employee has made the required contribution, if any, toward the cost of the insurance;
......
"4. the date of termination of employment. Termination of Active Service will be considered termination of employment, and the insurance will be discontinued, except as provided below.
......
"INJURY OR SICKNESS. If an Employee's Active Service terminates because of injury or sickness, the insurance will be continued, during the period the Employee remains totally and continuously disabled as a result of the injury or sickness, until the date on which the Policyholder [Keller] ceases to pay premiums for the Employee or otherwise cancels the insurance."
The principal question before the trial court on the summary judgment motions of both plaintiff and Connecticut General was whether, notwithstanding the quoted termination clauses, Denton's insurance coverage extended to within 31 days of his death on July 28. If so, he was covered at his death by operation of a provision for a 31-day period, beginning with the termination of his group coverage, in which he could convert his group coverage to an indivdual policy without evidence of insurability. Sec. 627.566, F.S. 1973. The policy provided:
"PAYMENT DURING THE 31-DAY CONVERSION PERIOD. If an employee dies during the 31-day period in which he is entitled to convert his insurance to an individual policy, whether or not application for the individual policy or payment of the first premium has been made, the Insurance Company will pay to the beneficiary designated under the group policy the amount of group life insurance which the employee was entitled to convert, and no payment will be made under any individual policy that may have been issued."
Connecticut General's motion for summary judgment was supported by the affidavit of Keller's group insurance supervisor, who stated that the May 19 deduction from Denton's wages "was for payment of premium for insurance coverage for the period from 5/13/72 thru 5/19 72", that employee withholdings were remitted to Connecticut General at the end of May "for accounting purposes only, not to extend *21 the time of coverage or pay the premium in advance," and that the Keller pay ment remitted before June 1 "included the premium covering Mr. Denton thru the period from May 1 thru May 19, and did not extend the coverage beyond that date."
Entering summary judgment for Connecticut General, the trial court stated that the May 19 deduction from his wages "was for the week of May 13, 1972, through May 19, 1972" and:
"[A]llowing for the thirty-one day conversion period from which Mr. Denton could have converted his Group Coverage Policy to an Individual Policy ... this extension, if taken from June 1, 1972, would only allow the conversion period through July 1, 1972."
Connecticut General offers support for the summary judgment based on terminating clause 2, which was evidently invoked by the trial court, and, alternatively, terminating clauses 1 and 4, above quoted. We will examine those clauses in order:

"1. the date the Employee ceases to be in a Class of Eligible Employees or ceases to qualify as an Employee;"
To give effect to Connecticut General's assertion that termination clause 1 automatically and unconditionally ended Denton's coverage on June 9, 1972, because Keller then terminated his employment, would render the application of clause 4 impossible in every situation to which it and the benefits of its exceptions would otherwise apply. We decline to adopt such a draconian interpretation of the policy. Clause 1, to have an effect in circumstances other than those to which clause 4 applies, necessarily refers to the termination of insurance for the employee whose employment continues but who ceases to be in a class eligible for insurance, or who is no longer a "permanent employee," as the policy defines the term Employee, or who cancels his payroll deduction order. Termination clauses should be construed, if possible, so that each is effective in the circumstances to which it explicitly applies and is not entirely nullified by one of the others. See Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938); Government Employees Ins. Co. v. Sweet, 186 So.2d 95 (Fla.App.4th, 1966); Financial Fire & Cas. Co. v. Callaham, 199 So.2d 529 (Fla.App.2nd, 1967). Denton's coverage was never affected by termination clause 1.

"2. the last day of the period for which the Employee has made the required contribution, if any, toward the cost of the insurance;"
The trial court held that Denton's group coverage terminated either on May 16 or June 1, 1972, because one date or the other was the last of the period for which Denton made the required contribution toward the cost of the insurance. Application of the 31-day conversion period, the court ruled, would at most extend Denton's coverage only to July 1, four weeks short of his death.
What contribution was required of Denton, and for what period did Denton last make such a contribution? The certificate issued Denton explicitly provided that "The employee is required to contribute toward the cost of the insurance providing employee benefits." Both the certificate and the policy laid out adverse consequences for an employee refusing to execute or cancelling "his payroll deduction order." But that is the end of it. Neither the policy nor the certificate requires contribution by employees in a particular amount. Neither document dictates the provisions of the required payroll deduction order. Neither requires that Keller's paydays and the employees' contributions through payroll deduction be at particular intervals. Leaving the implementation of the contribution requirement to determination by Keller and its employees, Connecticut General simply required that Denton contribute toward the premium by authorized payroll deductions, which of course Denton did as long as he worked and was *22 paid wages. As the trial court held, Denton last made his "required contribution" on May 19.
The affidavit of Keller's group insurance supervisor stated that Denton's May 19 contribution was "for insurance coverage for the period" May 13 through May 19. We cannot agree with this equation of the payroll period with the period "for which" the required contribution was made. The payroll period was merely the period in which the last contribution was made. As stated above, the frequency of employee pay periods was irrelevant to the policy and its coverage.
The more serious question is whether Denton's May contributions, including that of May 19, were for May coverage or for June coverage. Again, the insurance supervisor's affidavit implies that Keller's June 1 payment to Connecticut General, made up in substantial part of the accumulated May contributions by Denton and other employees, was a premium for May coverage, i.e., for insurance retroactively or in arrears. In holding that Denton's group coverage ended June 1, the trial judge apparently agreed. But the policy itself required Keller to pay premiums monthly in advance:
"PAYMENT OF PREMIUMS. The initial premium will be due on the Effective Date to cover the period from that date to the first Premium Due Date which is one month or more after the Effective Date. Premiums thereafter will be due on each succeeding Premium Due Date."
Unless the terms of the policy were varied by an agreement not shown by this record, Keller's June 1 payment was for June coverage. Correspondingly, employee contributions accumulated during May and remitted in the June premium were for June coverage. That fact is substantiated by the record showing that Denton signed his payroll deduction order on August 16, 1971, following his employment on August 10, that Keller then began wage deductions for insurance and that Denton's coverage commenced one month later, on September 16. Both the policy and Denton's employment history therefore offer strong evidence that Denton's contributions withheld from his May 1972 wages were contributions toward the cost of the insurance to be provided throughout June.
The burden of the evidence submitted by Connecticut General is that Connecticut General agreed, for a premium paid June 1 in an amount determined by the number of Keller's eligible employees on June 1, to insure Keller's May employees retroactively. Unlikely as that arrangement seems in light of the policy provisions, the affidavit offered entitles Connecticut General to a trial on that issue. But it was error for the court below to have ruled, as a matter of law, that May 31 was "the last day of the period for which the Employee has made the required contribution ... toward the cost of the insurance." Unless a trial establishes that Keller's June 1 remittance was a premium for insurance retroactively provided in May, the date on which Denton's group coverage ended under termination clause 2 was June 30. If that clause fixes the earliest date of possible termination of Denton's group coverage, the 31-day period for conversion to an individual policy extended coverage through July 28, the date of death.

"4. the date of termination of employment. Termination of Active Service will be considered termination of employment, and the insurance will be discontinued, except... ."
It remains for us to determine whether, under termination clause 4, Denton's group coverage terminated earlier than June 30 because of "termination of employment," caused either by termination of Denton's active service on May 15 or by a decisive and conscious severance of the employment relationship.
Clause 4 contains an exception, quoted earlier, which prevents Denton's termination *23 of active service on May 15 from constituting an immediate termination of his employment and of his insurance: he was totally and continuously disabled as a result of sickness and Keller thereafter continued, at least through June 1, to pay a premium for his insurance. Regardless of whether Keller's June 1 remittance was a premium for May or for June insurance, it was nevertheless a premium payment. Keller did not cease to pay premiums until the next premium was due and unpaid on July 1. There is no evidence that Keller otherwise attempted to cancel Denton's insurance by communication to Connecticut General prior to July 1. The unknown Keller employee who merely marked Denton's insurance card "terminated" did not thereby cancel any insurance which was otherwise in effect.
The critical question is therefore whether Denton's group coverage was terminated on June 9 by the action of Keller's manager striking Denton's name from the payroll and active personnel lists. If so, the 31-day conversion period would extend Denton's coverage only to July 10.
We disagree with appellant's assertion that Denton's group insurance could not be terminated by "termination of employment" as long as Keller did not cease to pay premiums and Denton's disability continued. While those circumstances could postpone the termination of Denton's active service [cf. Fidelity Bankers Life Ins. Co. v. Krinsky, 224 So.2d 736 (Fla. App.3d, 1969)], Keller could terminate Denton's employment at any time during June, even after paying a premium June 1 for June insurance covering Denton. The policy allowed Keller retroactive credits for premiums paid at the beginning of a month to insure employees later terminated during the month.
On June 9, Keller struck Denton's name from the employment roll. It may be assumed that Denton himself came to believe during June that he would not be restored to health and to work. There is no satisfactory evidence, however, that Denton ever considered that his employment relationship with Keller was, for all purposes, entirely and unequivocally severed. Denton's absence from work during May did not of itself signify to either Denton or Keller that Denton's employment was terminated. When Denton's name was stricken from Keller's employee roll, Denton was given no notice, either by Connecticut General or by Keller, that Keller then considered Denton's employment entirely terminated.
While Denton may be presumed to have had knowledge that the certificate limited his conversion period to 31 days, he had no actual or constructive knowledge of the formal termination of his employment and the beginning of the 31-day period. Considering that the conversion period had substantial value to Denton, that Denton was required by Connecticut General to contribute to the cost of the insurance, that Denton in May significantly contributed toward the cost of insurance for June and  so it appears on the present record  that Keller prepaid the premium for June insurance, we hold that nothing short of explicit notice of the termination of Denton's employment and of his group coverage could divest Denton of insurance during June. Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A.L.R. 413 (1935); see also Walker v. Occidental Life Ins. Co., 67 Cal.2d 518, 63 Cal. Rptr. 45, 432 P.2d 741, 744 (1967) and cases cited; 44 C.J.S. Insurance § 329 at p. 1265; 1 Appleman, Insurance Law and Practice, § 125 at p. 186 (1941); Annot., 68 A.L.R. 2d 8, 138 (1959). Contrast Couch v. Connecticut General Life Ins. Co., 216 So.2d 72 (Fla.App.2d, 1968), involving termination of coverage under a noncontributory policy in which the employer ceased to remit premiums; Bell v. New York Life Ins. Co., 134 Ind. App. 614, 190 N.E.2d 432 (1963), involving a noncontributory policy in which termination of employment was *24 explicitly defined as cessation of active fulltime work; Massachusetts Mutual Life Ins. Co. v. DeSalvo, 174 Colo. 115, 482 P.2d 380, 384 (1971), and Mutual Life Ins. Co. of N.Y. v. Presbyterian Hosp. of Dallas, 503 S.W.2d 870 (Tex.Civ.App. 1973). The cases relied on by Connecticut General, DePauw v. Aetna Life Ins. Co., 268 S.W.2d 734 (Tex.Civ.App. 1954), and Travelers Ins. Co. v. Estate of O'Rourke, 5 Ill. App.3d 1066, 284 N.E.2d 468 (1972), involved materially different insurance policies.
Explicit notice to Denton was not necessary to terminate his employment for group insurance purposes effective June 30. Denton's cessation of active work was itself sufficient to put him on notice that, without wages earned in June, there would be no June deductions for insurance, no July 1 premium payment and, consequently, no July group coverage. Keane v. Aetna Life Ins. Co. of Hartford, Conn., 22 N.J. Super. 296, 91 A.2d 875 (1952).
Unless Connecticut General demonstrates at trial that Keller's June 1 premium was not for June insurance but for May insurance, application of the 31-day conversion period should be held to have resulted in coverage on the day of Denton's death and a judgment for appellant in the principal amount of $5,000 should be entered against Connecticut General.
While appellant's alternative complaint against Keller is not so entirely lacking in substance as to justify its dismissal as an insufficient pleading, the record shows there was no harmful error in its dismissal. Keller was Connecticut General's agent for the collection and remittance of Denton's required contribution and of the premium. Contrast Couch v. Connecticut General Life Ins. Co., supra. Keller in fact remitted Denton's contribution and the entire premium before June 1. Whether the premium then paid was for insurance in advance or in arrears, it does not appear that Keller defaulted in a duty owed to Denton. No act of Keller's cancelled Denton's coverage without notice during June. Appellant has no cause of action against Keller like that recognized in Moore v. Peninsular Life Ins. Co., 213 So.2d 721 (Fla.App.1st, 1968), cert. den., 222 So.2d 746 (Fla. 1969).
The judgment for Keller is affirmed; that for Connecticut General is reversed.
RAWLS, Acting C.J., and MILLS, J., concur.