[Civ. No. 45767. First Dist., Div. Two. Nov. 23, 1979.]

Estate of ROBERT L. COATE, Deceased.
DANIEL KOTLER et al., Plaintiffs and Appellants, v.
LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and
Respondent.

## COUNSEL

Winokur, Schoenberg, Maier & Zang and Robert E. Zang for Plaintiffs and Appellants.

Sullivan, Roche & Johnson, Theodore A. Kolb, Robert E. Graham and J. Virginia Stevens for Defendant and Respondent.

## OPINION

**MILLER, J.**—Daniel Kotler, a creditor of decedent Robert L. Coate, and Margaret G. Coate, executrix of the estate of her deceased husband, appeal from a judgment in favor of Life Insurance Company of California based on an order for entry of summary judgment.

This case turns on the duty of a life insurance company to give written notice to a creditor-assignee of a life insurance policy as a precondition to the lapse of the policy.

The undisputed facts are that Robert Coate was indebted to Kotler for an amount in excess of $50,000. On or about October 1, 1974, decedent Coate, an agent of respondent, took out a 10-year straight line decreasing term life insurance policy. Kotler was named the primary beneficiary and decedent's estate was to receive any excess proceeds over the Kotler indebtedness. The annual premium on the policy was

$412.50, but a right was given to change the basis of premium payments from an annual to a monthly, quarterannual or semiannual basis.

On or about September 30, 1974, Robert L. Coate also executed a collateral assignment of the life insurance policy to Daniel Kotler. The collateral assignment was recorded by Life Insurance Company of California on or about October 10, 1974. The policy recites that such an assignment is "binding" on the insurer upon such recordation. Thus, Kotler was named as both the beneficiary and as the assignee of the policy.

Subsequently, premium notices were forwarded to Coate at his office. No premium notices were ever sent by the insurer or by the insured to Kotler.

On or about September 12, 1975, Coate gave oral instructions to respondent to change the basis of premium payments from annual to quarterannual and to send future notices to him. Thereafter, all notice of premium due dates, notices of nonpayment of premiums and notices of termination of the subject policy were sent to Coate. No notices of premiums due, nonpayment, termination or right to reinstate were ever sent by the insurer or the insured to Kotler.

Coate died of terminal cancer on April 11, 1976. At the time of his death, the insured had failed to pay the quarterly premium of $109.35 due on January 1, 1976 within the 31-day period of grace.

On January 16, 1976, a "notice of late payment offer for the payment of the quarterly premium" was sent to Coate, but not to Kotler. After termination of the policy and on or about March 3, 1976, respondent mailed a notice to Coate, but not to Kotler offering to reinstate the life insurance policy upon payment of the past-due premium and completion of an application for reinstatement.

According to the declaration of Kotler's attorney, filed in opposition to the motion for summary judgment, Coate had assured the attorney that he would be able to pay the premiums and would do so. Kotler had offered to pay such premiums in the event Coate was unable to do so.

Had the policy remained in force, the unpaid premiums at the time of the death of Coate would have been $218.50, representing two quarterannual premiums of $109.25 each.

If the policy lapsed for nonpayment of the $218.50, respondent will escape the payment of $44,781.50 of policy proceeds due on the 10-year term policy.

Preliminarily, we note that the trial court did not ascribe any reasons for its ruling. However, it appears to this court that the issues below were concerned solely with the interpretation of the subject insurance policy and the assignment contract. ■ Where the determination of the trial court is one of law based upon written instruments, the appellate court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) Accordingly, we consider appellants' contentions on appeal.

■ In 1975, the Legislature enacted section 10173.2 of the Insurance Code[1] which requires notice to an assignee prior to an attempted lapse of an insurance policy. The statute states that it is to apply to assignments executed after January 1, 1976. Appellants argue the statute creates impermissible class distinctions between old assignments and new (post-January 1, 1976) assignments.

In reviewing a summary judgment the appellate court must consider only the facts before the trial court and disregard new allegations urged on appeal. (*G & D. Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 997 [91 Cal.Rptr. 22].) In the summary judgment proceedings below, appellants specifically relied on the language of the assignment rather than arguing that the statute was unconstitutional. Since the constitutional claim was not before the trial court on the summary judgment motion, it will not be considered here.

---

[1]Section 10173.2 provides: "When a policy of life insurance is, after the effective date of this section, assigned in writing as security for an indebtednesss, the insurer shall, in any case in which·it has received written notice of the name and address of the assignee, mail to such assignee a written notice, postage prepaid and addressed to the assignee's address filed with the insurer, not less than 10 days prior to the final lapse of the policy, each time the insured has failed or refused to transmit a premium payment to the insurer before the commencement of the policy's grace period or before such notice is mailed. The insurer shall give such notice to the assignee in the proper case while such assignment remains in effect, unless the assignee has notified the insurer in writing that such notice is waived. The insurer shall be permitted to charge the insured directly or against the policy the reasonable cost of complying with this section, but in no event to exceed two dollars and fifty cents ($2.50) for each such notice. [¶] As used in this section, 'final lapse of the policy' means the date after which the policy will not be reinstated by the insurer without requiring evidence of insurability or written application."

██ Consequently, the question before this court is whether, prior to enactment of section 10173.2 of the Insurance Code, insurance companies had a duty to give written notice to a creditor assignee of a life insurance policy as a precondition to the lapse of the policy. This is an issue of first impression in California.

The subject policy explicitly states in its general provisions that "[t]he Owner may assign this policy absolutely or as collateral security by a written instrument satisfactory to the Company, subject to the written consent of any irrevocable Beneficiary...An assignee under an absolute assignment is the new Owner of the policy and shall have all the right, title and interest of the prior Owner. A collateral assignee is not an owner...." The instant assignment purports to be an "Assignment of Life Insurance Policy as Collateral" and thus the creditor assignee is not the owner of the policy.[2] However, the document clearly assigns "all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof)."

Paragraph C expressly excludes from the assignment 1) the right to collect from the insurer any disability benefit; 2) the right to designate and change the beneficiary; and 3) the right to elect any optional mode of settlement permitted by the policy; but the paragraph concludes: "the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder."

Paragraph B expressly includes, inter alia, the sole right to "surrender the Policy" and "to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom."

Appellants contend that although Kotler never attained the status of owner of the policy, since the assignment provides that "all rights" of the insured policy owner not specifically excepted pass to the assignee, he had the right to receive notices of premiums due, notices of nonpayment, and offers of reinstatement.

---

[2] It is interesting to note that section 10173.2 of the Insurance Code makes no distinction between "absolute assignments" and "collateral assignments." (See Annot. 68 A.L.R. 3d 360 et seq.)

■ Appellants correctly assert that California case law has required that insurance policies be construed in the light of the reasonable expectations of laymen who typically deal with such policies without benefit of legal counsel. In interpreting insurance agreements the courts apply the general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be clearly stated so as to apprise the insured of its effect. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) In *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 921 [109 Cal.Rptr. 473, 513 P.2d 353], our Supreme Court held that, "Provisions which purport to exclude coverage or substantially limit liability must be set forth in plain, clear and conspicuous language."

■ In the instant action the general language of the assignment transfers "all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof)." Therefore, the assignment, by its express terms, clearly and unambiguously transfers to the creditor-assignee "all rights" of the insured except such rights as were specifically excepted in paragraph C. It is obvious that if the insured had the right to receive notices of premiums, notices of intended lapse, offers of reinstatement, such right passed by assignment to Kotler, and the insured agreed to be bound by the assignment of such rights upon its recordation at the home office. Paragraph C does not except from the broad general assignment of rights under the policy the right to receive notice of nonpayment of premiums or of lapse of the policy.

We agree with appellants' argument that if the insurer had meant to exclude from the scope of the assignment the right to receive delinquent premium notices, notices of intended lapse, or offers of reinstatement, it should have unambiguously set forth such excepted rights in paragraph C, so as to qualify the otherwise unambiguous and unconditional assignment of policy rights and privileges made pursuant to paragraph A of the assignment. Not only does paragraph C not contain any such exception, to the contrary, it expressly recognizes that even such rights as were excepted "shall in no way impair the right of the Assignee to surrender the Policy."

Section 1655 of the Civil Code provides that "[s]tipulations which are necessary to make a contract reasonable...are implied, in respect to matters concerning which the contract manifests no contrary inten-

tion." In *Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518 [63 Cal.Rptr. 45, 432 P.2d 741], an employee under a group policy enjoyed a privilege of converting it to an individual policy within 31 days after termination of employment. He was suspended from his job in April 1961, and termination for cause was later claimed by his employer. In November of 1961, when the employee sought to exercise his conversion option, the insurer claimed that the conversion privilege had lapsed under the 31-day grace period provision. Relying on section 1655 of the Civil Code, the Supreme Court stated that the conversion privilege was a valuable property right, which would be of dubious value if the employee were not entitled to notification of an alleged termination of employment. Hence, the court held that a duty of the insurer to give timely notice should be implied in order to make the contract "reasonable." In the present case, as in *Walker,* Kotler owns a valuable property right in the form of an assignment. The assignment would be of dubious value if notice of policy lapse and the right to reinstatement is not extended to the assignee.

In *Wells* v. *John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66 [149 Cal.Rptr. 829], wherein the plaintiff brought an action against an insurer predicated on the insurer's failure to advise her that the life insurance policy assigned to her as security for a loan to the insured had lapsed at the time of the assignment, the court held that the insurer was under a duty to disclose the lapse of the policy. The court reasoned that the insurance company "is not entirely a disinterested third party in connection with assignments of the policies it sells. Life insurance companies conduct business of a 'quasi-public nature.' [Citation.] The life insurance industry as a whole...[has] quite properly emphasized the role of life insurance policies as convenient security devices....By thus involving itself in the transaction, [the insurance company] acts in part in its own interest: it not only promotes the efficiency of life insurance policies as a security device, but also keeps itself informed concerning the changing interests of owners and creditors of owners in the policies which it has issued."

The *Wells* court acknowledged an apparent general rule that the insurer is under no obligation to notify an assignee that premiums are coming due and the policy is about to lapse, and distinguished the insurer's duty to inform an assignee that the assigned policy has lapsed at the time of assignment from the insurer's duty to give notice of a prospective lapse. (85 Cal.App.3d at p. 73.) We see little reason to make such a distinction. The so-called general rule is predicated on insurance

treatises. (See 2A Appleman, Insurance Law and Practice, § 1315; 5 Couch, Insurance (2d ed. 1960) § 30.143, p. 677.) These treatises, in turn, are based on case law from jurisdictions outside of California.

■ California has recently imposed far more stringent rules on the interpretation of insurance policies in order to protect legitimate expectations of average laymen. Thus, the meaning of insurance policies is determined by the insured's reasonable expectation of coverage, and all doubts are resolved against the insurer. (*Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219].) ■ It appears to this court that a similar standard must be applied to collateral documents and assignments of insurance policies. We find the reasoning of *Wells* as compelling to support the proposition that an insurer has a duty to notify an assignee of a prospective lapse and right to reinstatement of the policy as it was to find a duty on the part of the insurer to notify the assignee that the assigned policy has already lapsed.

In light of the foregoing, we conclude that the trial court abused its discretion in granting the summary judgment.

The judgment below is reversed.

Taylor, P. J., and Rouse, J., concurred.