[No. B057953. Second Dist., Div. Seven. Oct. 7, 1992.]

PACIFIC STANDARD LIFE INSURANCE COMPANY, Plaintiff and Respondent, v.
TOWER INDUSTRIES, INC., et al., Defendants and Appellants.

1882

**COUNSEL**

Julian A. Pollok for Defendants and Appellants.

Finkle, Hersh, Stoll & Collett, David G. Finkle and Michelle Leight for Plaintiff and Respondent.

**OPINION**

**WOOD (Fred), J.—**

I.

INTRODUCTION

This action arises out of a dispute over the parties' respective duties and obligations pursuant to a group life insurance policy (the Policy) issued by plaintiff/respondent Pacific Standard Life Insurance Company (Pacific) to defendants/appellants Tower Industries, Inc., and Tower Mechanical Products, Inc. (collectively referred to herein as Tower) for the benefit of Tower's employees.

II.

STATEMENT OF FACTS

Under the terms of the Policy, an employee was covered so long as he worked. In the case of sick leave or leave of absence, those benefits could be extended, subject to two requirements: (1) the leave of absence could be for six months only; and (2) before Tower could grant a leave of absence, it had to adopt a plan, satisfactory to Pacific, establishing a uniform policy for such leaves.

An employee whose coverage terminated because his leave of absence had ended without his returning to work was entitled to convert from group to individual coverage. Tower was required by the Policy to notify the affected employee that he had such conversion rights.

Howard Johnson was an employee of Tower and was covered by the policy in the principal sum of $100,000. In February 1985, Johnson was granted an indefinite medical leave of absence. He returned to work briefly in January 1986 and then went on an indefinite leave from February 1986 until his death on February 26, 1987.

It is undisputed that Tower never submitted a uniform leave of absence policy to Pacific. Instead, Tower granted such leaves arbitrarily and in the

discretion of Tower's president, Richard B. Slater. Tower never told Johnson that he could remain covered for only six months while on leave or that he had conversion rights when those six months elapsed.

From February 1985 through February 1987, Tower submitted computer-generated printouts to Pacific which showed Johnson as a full-time employee, not on leave of absence, thus eligible for coverage. Tower continued to pay premiums to Pacific on behalf of Johnson throughout this period.

Tower's policy was part of a group of subscribing policyholders operating as the Group Retirement Employer's Affiliated Trust (Trust). The Trust performed the ministerial duties of the employer in connection with the Policy.

The Trust sent reports to Tower concerning eligible employees, and Tower would send back updates as to who was eligible for coverage.

In reliance on those representations, Pacific accepted premiums from Tower on Johnson's behalf.

After Johnson died, Pacific learned for the first time of Johnson's two-year leave of absence and Tower's continual misrepresentations as to his status. Johnson's widow filed a claim under the Policy for benefits of $100,000, a claim which Pacific initially disputed, insisting that Tower only was liable for the claim. Pacific paid the claim in order to avoid a bad faith claim by Mrs. Johnson.

## III.

## Procedural History

This action was commenced on April 13, 1989. On September 25, 1989, Pacific filed its motion for summary judgment or, in the alternative, summary adjudication of issues. By minute order, dated November 9, 1989, the Honorable Vernon G. Foster granted summary adjudication as to the following issues:

1. Tower was Pacific's agent in performing the administrative function of notifying employees of their conversion rights under the policy;

2. Tower was Pacific's fiduciary in administering the policy to the same extent as determined by issue No. 1;

3. Tower misrepresented to Pacific that Howard Johnson was a full-time employee eligible for coverage;

4. Tower's misrepresentations concerning Johnson's eligibility for group coverage were material misrepresentations;

5. Pacific justifiably relied on Tower's misrepresentations concerning Johnson's eligibility for group coverage;

6. As a proximate result of Pacific's reliance on Tower's misrepresentations, Pacific was injured as alleged in the complaint;

7. Tower breached its contract with Pacific by failing to notify Johnson of his conversion rights;

8. Tower breached its contract with Pacific by providing misleading data to Pacific concerning Johnson's eligibility for group coverage;

9. Pacific was damaged as alleged in its complaint by Tower's breach of contract;

10. The contract of insurance between Tower and Pacific contained an implied covenant of good faith and fair dealing;

11. Tower's conduct breached the implied covenant of good faith and fair dealing (the breach was limited to contract damages);

12. Pacific was potentially liable to Johnson's widow on her claim made under the policy of insurance;

13. Pacific was not a volunteer in paying Mrs. Johnson's claim.

On October 24, 1990, Tower filed a motion for summary adjudication of the issue regarding the amount of damages recoverable by Pacific. The Honorable Jerry K. Fields denied the motion on November 28, 1990.

On December 7, 1990, the final status conference in this matter was held, and on that day, Pacific submitted a motion for judgment based upon the fact that no further evidence was needed or admissible because of the court's previous granting of Pacific's motion for summary adjudication. Pacific's motion was granted and judgment was entered on December 27, 1990. Tower timely appealed the judgment.

IV.

DISCUSSION

A. *The trial court followed the appropriate procedure in granting Pacific's motion for judgment.*

Tower employs a three-step analysis to support its argument that the trial court erred in granting Pacific's motion for judgment:

(1) In granting summary adjudication of issues, the trial court failed to state any reasons for its conclusions and failed to make any reference to the evidence to support those conclusions;

(2) When the court ultimately entered judgment for Pacific, it also failed to specify any reasons or refer to any evidence to support its determination;

(3) The motion for judgment was essentially a motion for summary judgment and was not brought upon proper notice.

Assuming that Tower is correct in contending that the motion for judgment was actually a motion for summary judgment, the Honorable Jerry K. Fields did state his reasons for granting the motion. He did so, in part, on the basis of Judge Foster's earlier ruling on Pacific's motion for summary adjudication.

Once summary adjudication has been granted as to an issue, that issue shall be deemed established and the action shall proceed as to the issues remaining. (Code Civ. Proc., § 437c, subd. (f).)[1] When summary adjudication of issues is granted by one judge and the remaining issues are tried by a different judge, the second judge is bound by the first judge's determination, and the losing party may not seek relitigation of the decided issues before the second judge. (See *Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 202-203 [164 Cal.Rptr. 585].)

Judge Fields also determined that the reason Judge Foster did not grant summary adjudication was because Pacific failed to address the affirmative defenses in the motion. However, Judge Fields also determined that the

[1]This action preceded the 1990 amendments to Code of Civil Procedure section 437c in which summary adjudication of "issues" was replaced with summary adjudication of causes of action, defenses, affirmative defenses, unmeritorious claims for damages as defined in Civil Code section 3294 and lack of an owed duty. (See Amendments, Deering's Ann. Code Civ. Proc. (1992 pocket supp.) § 437c, p. 43.)

affirmative defenses were inapplicable. Since all issues had been determined, he then properly granted Pacific's motion for judgment.

In effect, not only did Judge Fields explain his reasons for granting this motion, he was legally bound to accept Judge Foster's previous findings.

Moreover, Tower has waived its right to complain of insufficient notice of the motion for judgment. When the motion was heard at the final status conference on December 7, 1990, the court asked Tower's counsel if he wished to be heard before the court ruled. Counsel declined, stating that Tower's position had already been stated and that he had no further argument to make. Counsel did not object to the motion on the ground of lack of notice.

Carried to its logical conclusion, Tower would have this court remand the action to the trial court so that a so-called properly noticed motion for judgment could be brought. However, the result would be the same because no triable issue of fact remains and judgment for Pacific would, again, be the necessary result. An alternative procedure would be to remand the case for trial. Plaintiff could then file a motion *in limine* to preclude Tower from offering any evidence in defense and judgment would properly follow for Pacific. Either procedure is wasteful. The action taken by Judge Fields was correct.

B. *Review of the relevant Policy provisions establishes that they are clear and unambiguous.*

Tower next asserts that because the insurance contract at issue is an adhesion contract, this court must exercise a de novo review of the Policy provisions and resolve all ambiguities regarding Tower's obligations in its favor.

A review of the relevant policy provisions shows that they are clear and unambiguous. To demonstrate, provision 2.025 sets forth the requirements for eligibility under the Policy:

"The Employee must be actively at work at his regular place of business for full time and full pay, unless the Entry Date otherwise determined is not a regular working day. In this event, the Employee must be actively at work at his regular place of business for full time and full pay on the last regular work day preceding such Entry Date."

Such coverage terminates whether or not written notice has been made by the employer to Pacific on:

"The date specified by the Employer (up to a maximum of six (6) months) after the date of layoff due to reduction of Employer's work force or approved leave of absence, subject to the Employer adopting a uniform policy for all Employees which precludes individual selection and which is satisfactory to [Pacific]." (Policy §§ 5.01 and 5.012.)

The meaning of these clauses is without controversy: to be eligible for group coverage, an employee must work full-time. Once he ceases to do so, his insurance benefits cease, giving him 31 days in which to convert to individual coverage. (Policy §§ 5.04 and 5.05.)

However, should the employee be on a leave of absence his group coverage will remain in effect on the following terms: first, he will remain covered for a maximum of six months; second, before he can do so, the employer must devise a uniform leave of absence plan which is acceptable to Pacific. Accordingly, none of the relevant Policy provisions are ambiguous and need not be interpreted in Tower's favor.

C. *The trial court correctly ruled that Tower is Pacific's agent and fiduciary.*

In granting Pacific's motion for judgment, Judge Fields determined that Tower was Pacific's agent in performing the administrative function of notifying employees of their conversion rights.

Tower argues that this finding was incorrect and that a triable issue of fact exists as to whether Tower was Pacific's agent. This argument is based, in part, on Tower's misinterpretation of such cases as *Elfstrom* v. *New York Life Ins. Co.* (1967) 67 Cal.2d 503 [63 Cal.Rptr. 35 [432 P.2d 731], and *Metropolitan Life Ins. Co.* v. *State Bd. of Equalization* (1982) 32 Cal.3d 649 [186 Cal.Rptr. 578 [652 P.2d 426], which cases Tower asserts the trial court incorrectly applied.

Tower also maintains, without citation to authority, that courts have found that an employer acts as a carrier's agent *"for the purpose of dealing with disputes between the carrier and employee,"* but not necessarily in disputes between the carrier and the employer. Tower contends that there is no reason for finding that the employer is the carrier's agent in the latter instance. This argument ignores the explicit rulings of *Elfstrom* and *Metropolitan Life* as well as their spirit.

In *Elfstrom,* the California Supreme Court considered whether the acts of the employer who administered a group health insurance policy could be

attributed to the insurer. In that case, the carrier sought to avoid payment of death benefits, claiming the decedent was not an eligible employee. The employer's bookkeeper had improperly included the decedent among those covered with group life insurance coverage. Although the insurer did not know or have reason to know of the decedent's ineligibility, the court held, as a matter of law, that "the employer is the agent of the insurer in performing the duties of administering group insurance policies." (*Elfstrom* v. *New York Life Ins. Co.*, *supra*, 67 Cal.2d at p. 512.)

Although *Elfstrom* did not deal with the instant claim where the insurer sued the employer who acted as its agent and caused the liability, the principle is the same. If Johnson's widow had sued Pacific to collect death benefits, as was the case in *Elfstrom*, there is no question that Tower would be deemed Pacific's agent. The only difference in the case at bar is that Pacific paid the benefits to Mrs. Johnson to avoid a bad faith claim and now seeks reimbursement from Tower. There is no reason to distinguish between the two situations. Just as the employer in *Elfstrom* was deemed the insurer's agent for purposes of administration of the policy, Tower should be deemed Pacific's agent.

Moreover, in *Metropolitan Life*, the California Supreme Court again considered the question of whether the employer acted as the agent of the insurer and stated that *Elfstrom* was controlling on that issue. Namely, that the employer acts as the insurer's agent in administering group insurance policies. (*Metropolitan Life Ins. Co.* v. *State Bd. of Equalization*, *supra*, 32 Cal.3d at pp. 658-659.)

Tower seeks to escape this rule by contending that the owner of the Policy is the Trust whose manager performed all of the administrative duties and that it had no relevant functions to perform under the policy other than to pay premiums to the Trust. This contention ignores the plain language of the Policy. For instance, section 1.03 of the Policy requires the employer (not the Trust or the employee) to apply for coverage on behalf of its eligible employees. Policy section 10.06 mandates that the employer furnish to the Trust's manager, the names of all insured employees and all data Pacific requires to determine the amount of coverage and the premium to charge. This section also requires the employer to furnish all information concerning increases, decreases and terminations of amounts of insurance.

Tower was also required to adopt a nondiscriminatory, uniform leave of absence policy for employees taking sick leave or leave of absence which it failed to do. Finally, Tower had a mandatory duty to notify Mr. Johnson of his conversion rights pursuant to section 5.05 of the Policy.

Moreover, the conduct giving rise to the ruling in *Elfstrom* is also remarkably similar to Tower's conduct in this action—both employers provided the insurer with erroneous information concerning an employee's full-time status and, in doing so, misrepresented the employee's eligibility for coverage.

As for Policy section 10.12, concerning the need for written authorization by Pacific for Tower to act as its agent, such authorization exists in the Policy itself which charges Tower with the duty of notification concerning conversion rights. More importantly, to the extent that such a clause conflicts with the holdings of *Elfstrom, Metropolitan* and their progeny, it is invalid.

D. *Tower's misrepresentations were intended to be conveyed to Pacific.*

Part of the basis for granting Pacific's motion for judgment was on the trial court's finding that Tower misrepresented certain material facts to Pacific and that Pacific justifiably relied on these misrepresentations.

Tower argues that it did not have an obligation under the terms of the Policy to provide Pacific with any information, but also contends that all information was provided to the Trust, rather than Pacific. Tower further contends that there was no factual showing that any of its officers or employees had any knowledge of what information may have been passed on to the Trust.

It is long settled that " ' "representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right to relief as if the representations had been made to him directly." ' " (*Massei* v. *Lettunich* (1967) 248 Cal.App.2d 68, 73 [56 Cal.Rptr. 232].)

The Trust performed certain ministerial duties on behalf of Tower and Pacific, and, therefore, Tower's misrepresentations concerning Johnson's status were intended to affect Pacific's conduct in accepting premiums and continuing coverage on Johnson's behalf. Even though the misrepresentations were made directly to the Trust, they were intended to be repeated to Pacific and are therefore fraudulent as to Pacific.

E. *The trial court correctly found that Tower breached its contractual obligation.*

In granting Pacific's motion for judgment, Judge Fields adopted Judge Foster's finding that Tower had breached its contract with Pacific and

breached the implied covenant of good faith and fair dealing. Tower opposes these findings on the basis that the Policy contained no affirmative duties to be performed by Tower. However, as previously demonstrated, Tower is incorrect. The Policy requires Tower to notify its employees of their conversion rights under the Policy. Tower was also required to adopt a uniform leave of absence plan and submit it to Pacific for approval, yet failed to do so. The purposes of the notification clause was to eliminate uncertainty as to an employee's knowledge of his valuable conversion rights.

Tower further argues that the Policy did not impose upon Tower the obligation to provide either Pacific or the Trust with a list of current employees or to advise of changes in the status of the employees. This argument ignores both the explicit terms of the Policy and the commonsense meaning of the Policy itself.

To demonstrate, section 10.06 states: "Essential Data [¶] Each Employer will furnish to the Manager and the Manager to the Company the names of all Employees insured under the Policy together with whatever information the Company requires in order to determine the Employee Entry Date, the Amount of Insurance and the premium to be charged. The Employer will also furnish promptly all pertinent information concerning increases, decreases and terminations of Amounts of Insurance. Each Employer and the Manager agree to permit the Company at any reasonable time to inspect all pertinent records for any purpose relating to the provisions of the Policy."

Since this clause places an affirmative duty upon Tower to apprise Pacific of all employees insured under the Policy, as well as changes and determinations of the amounts of insurance, it should go without saying that in order to do so, Tower was obligated to provide Pacific, through the Trust, with the current status of its employees, including those on extended leave of absences such as Mr. Johnson.

Moreover, the only way such information could be obtained by Pacific was through Tower itself, via the manager of the Trust, who performed solely ministerial duties for both Tower and Pacific in connection with the policy. Pacific had no direct knowledge of which employees were on sick leave or leave of absence or who changed from full-time to part-time status. Indeed, Tower is the only entity who could possibly have such information. Therefore, it was Tower's duty to provide Pacific with all such essential data so that it, in turn, could accurately predict its own obligations to its insureds.

Tower also argues that Pacific improperly used parol evidence, specifically, the declaration of John McDonough, to lead the trial court to erroneous conclusions regarding the meaning of ambiguous terms of the Policy. Tower

further contends that because parol evidence was presented, there exists a triable issue of fact regarding the meaning of the so-called ambiguous Policy provisions.

As previously discussed, the terms of the Policy are clear and are not susceptible to more than one interpretation. Tower did not argue otherwise at the hearing on Pacific's motion for judgment and, therefore, is precluded from so arguing before this court.

In addition, Tower incorrectly characterizes McDonough's declaration as parol evidence. This declaration does not purport to provide evidence of any contemporaneous or prior oral agreements for the purpose of interpreting or contradicting the terms of the Policy. Rather, the declaration sets forth certain acts on the part of both parties which ultimately led to Pacific paying the claim of Johnson's widow.

F. *The court was correct in ruling that Pacific was damaged in the amount of $126,438 since that is the amount Pacific paid to Johnson's widow.*

Finally, Tower contends that the trial court erred in giving effect to the order granting Pacific's motion for summary adjudication that Pacific was injured as alleged in the complaint and in ordering judgment in favor of Pacific in the amount of $126,438, plus costs. It is Tower's contention that damages are limited to the difference between the amount of premiums payable under an individual policy, less the amount of premiums received under the group policy.

Tower supports this argument on the theory that it would have caused Mr. Johnson to exercise his conversion rights and paid the premiums had it been aware that conversion was required. Tower made the same argument in its motion for summary adjudication. That motion was also denied. Tower did not seek writ relief from the denial.

Tower also unsuccessfully argued this theory in its opposition to Pacific's motion for summary judgment, contending that even if Johnson's group coverage terminated, Johnson had the right to convert his individual coverage and presumably would have done so.

Setting aside the fact that Tower had a duty to notify Johnson of his conversion rights pursuant to section 5.05 of the Policy, Tower's theory was previously rejected in *Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518 [63 Cal.Rptr. 45 [432 P.2d 741].)

In *Walker*, the plaintiff's deceased husband had been provided two group life insurance policies by his employer with the right to convert them to

individual policies within 31 days of his termination from employment. The husband was terminated before his death and had signed a conversion application for one of the policies for $10,000. His wife sought to recover on both policies, claiming that he would have converted both, but felt it was futile to do so.

The court held that the insurer's liability was limited to the amount sought by the employee, and since the employee signed an application to convert only $10,000, plaintiff was not entitled to the total amount of both policies, i.e., $22,000. The court further held that there was no evidence nor any claim that the employee desired more than $10,000 in insurance or that he intended to exercise his conversion option more than once within the 31-day period. (67 Cal.2d at p. 525.)

Moreover, whether or not Tower's president, Richard B. Slater, would have caused Tower to pay the premium on the individual policy to which Johnson would have been entitled to convert, is without merit.

Since Tower failed to notify Johnson of his conversion rights, there is no way of knowing if Johnson would have exercised that option. The *Walker* court rejected such speculation with regard to the employee's state of mind and such speculation should be rejected in this case.

## V.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent Pacific.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied November 5, 1992.