[Civ. No. 31265. First Dist., Div. Two. Aug. 21, 1974.]

MABEL W. HINCKLEY, Individually and as Administratrix, etc., Plaintiff and Appellant, v.
BECHTEL CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Melbert B. Adams and Clayton O. Rost for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Paul R. Haerle, Stephen D. Butler, Hassard, Bonnington, Rogers & Huber, John I. Jefsen and Lawrence Handelman for Defendants and Respondents.

## OPINION

**KANE, J.**—Plaintiff, Mabel W. Hinckley, individually and as administratrix of the estate of Charles Hinckley ("appellant"), appeals from the trial court's judgment entered after respondents' demurrer to the first amended complaint was sustained without leave to amend.

The allegations of appellant's first amended complaint, which in ruling on a demurrer must be regarded true (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; *Flores* v. *Arroyo* (1961) 56 Cal.2d 492 [15 Cal.Rptr. 87, 364 P.2d 263]), disclose that Charles Hinckley ("Hinckley") was employed by respondent Bechtel Corporation ("Bechtel") for 19 years and retired from said employment on March 19, 1969. As one of the employment benefits, Bechtel offered to its employees a low cost group life insurance program through co-respondent California Western States Life Insurance Company ("California Western"). Bechtel administered the program and maintained personnel for this purpose. Under the provisions of the policies an insured has the right to convert the insurance into an individual policy without evidence of insurability within 30 days after termination of employment. Hinckley was insured under the aforementioned group life insurance policies issued to him on or before January 1, 1967, and was entitled to the option of conversion. However, he failed to exercise his option upon his retirement and/or within the statutory period prescribed by Insurance Code section 10209, subdivision (d).

Hinckley died on October 3, 1970. Subsequently appellant, his widow, brought the present action to recover damages in the amount of $73,000, the monetary value of the group policies. In her complaint appellant advances two theories of recovery: breach of contract (first cause of action) and negligence (second cause of action). In effect, she alleges that notice of termination of group insurance is essential to render the conversion privilege accorded to the employee valuable (*Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518 [63 Cal.Rptr. 45, 432 P.2d 741]) and the failure to give such notice to Hinckley constituted a breach of both the employment contract with Bechtel and the insurance contract with California Western. In the alternative, appellant maintains that Bechtel's failure to give notice amounted to actionable negligence. As will appear from the discussion below, appellant's contentions cannot be sustained.

(a) *Breach of Employment Contract:* While appellant's assertion that Bechtel's failure to give Hinckley notice of his conversion privilege

constituted a breach of employment contract is somewhat novel, it lacks requisite legal or factual support and therefore must fail. It is noteworthy that the foregoing claim is not predicated on any express provision of the employment contract, but rather on the premise that the employer's duty to give such notice was an implicit term of the employment agreement (Civ. Code, § 1655[1]; *Walker* v. *Occidental Life Ins. Co., supra*). This contention cannot stand for a number of reasons.

First of all, it is well settled in California that in performing functions necessary to administer group insurance policies the employer is the agent of the insurer; and, with regard to his liability, the rules of agency are governing (*Walker* v. *Occidental Life Ins. Co., supra,* at p. 522; see also *Elfstrom* v. *New York Life Ins. Co.* (1967) 67 Cal.2d 503 [63 Cal.Rptr. 35, 432 P.2d 731]; *Pantzalas* v. *Superior Court* (1969) 272 Cal.App.2d 499 [77 Cal.Rptr. 354]).

Second, even if assumed arguendo that the group life insurance as an ingredient of the benefit plan offered by the employer to all his employees does constitute a part of the employment contract (cf. *Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711 [197 P.2d 807]), appellant's contention cannot be sustained. ▪ It is widely recognized that the courts are not at liberty to revise an agreement under the guise of construing it. Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves. Courts cannot make for the parties better agreements than they themselves made or rewrite contracts because they operate harshly or inequitably as to one of the parties (*Cousins Inv. Co.* v. *Hastings Clothing Co.* (1941) 45 Cal. App.2d 141, 147 [113 P.2d 878]). ▪ Accordingly, it has been held that covenants or terms in an agreement may be implied only if the following conditions are met: (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; and (5) there can be no implied covenant where the subject is completely covered by the contract (*Stockton Dry Goods Co.* v. *Girsh* (1951) 36 Cal.2d 677 [227 P.2d 1, 22 A.L.R.2d 1460]; *Masciotra* v. *Harlow* (1951) 105 Cal.

---

[1]Civil Code section 1655 provides in part that stipulations which are necessary to make a contract reasonable are implied.

App.2d 376 [233 P.2d 586]; *Cousins Inv. Co.* v. *Hastings Clothing Co., supra.*)

■ It is readily apparent that the allegations of appellant's first amended complaint fail to meet each element of the test laid down above. It must be especially emphasized that appellant does not allege that it was clearly within the contemplation of the parties that Bechtel should give special notice to its employees of the conversion right under the group insurance policy and/or that any legal necessity—the most important single element of implied covenant (cf. *Freeport Sulphur Co.* v. *American Sulphur Royalty Co.* (1928) 117 Tex. 439 [6 S.W.2d 1039, 60 A.L.R. 890]; *Grass* v. *Big Creek Development Co.* (1915) 75 W.Va. 719 [84 S.E. 750]; *Masciotra* v. *Harlow, supra; Cousins Inv. Co.* v. *Hastings Clothing Co., supra*) —existed for giving such notice. The omission of such allegations from the complaint gains special significance in light of Insurance Code section 10209 (see below) which requires a group policy of insurance to contain a provision that the insurer will issue to the employer for delivery to the insured employee an individual certificate setting forth a statement as to the insurance protection to which the employee is entitled (see also *Humphrey* v. *Equitable Life Assur. Soc.* (1967) 67 Cal.2d 527, 533 [63 Cal.Rptr. 50, 432 P.2d 746]).

Appellant nonetheless insists that in the case at bench the implied covenant of duty to give notice should attach because the first amended complaint is devoid of any allegation that the insurance certificate was, in fact, delivered to Hinckley and, therefore, knowledge of the contents of the policy cannot be presumed. Appellant apparently misses the point.

As indicated above, Insurance Code section 10209 prescribes a statutory duty for the employer to deliver to the insured employee an individual certificate setting forth inter alia the time and other conditions of exercising the conversion privilege. ■ The mere existence of a statute, of course, raises a strong disputable presumption that the provisions contained therein have been dutifully carried out (Civ. Code, § 3548; *Peabody* v. *Barham* (1942) 52 Cal.App.2d 581, 584 [126 P.2d 668]). ■ It is also settled that a general demurrer may be taken not only from the facts appearing upon the face of the complaint, but also from any matter of which the court is required to, or may, take judicial notice (Code Civ. Proc., § 430 (now § 430.30); 3 Witkin, Cal. Procedure (2d ed.) § 798, p. 2412). ■ Insurance Code section 10209 is a statutory law of this state of which both the trial court and the reviewing court are required to take judicial notice (Evid. Code, §§ 451, 459). All this inevitably leads to the conclusion that in the case at bench a statutory presumption arose that

Hinckley received the insurance certificate containing provisions as to the exercise of the conversion right and the statute raising such presumption became a part of the first amended complaint by virtue of mandatory judicial notice which, in the absence of contrary allegations, was properly considered in sustaining the demurrer without leave to amend.

Third, appellant utterly fails to provide any authority in support of the contention that under the facts here presented the *employer* was under a legal duty to give notice (other than that required by Ins. Code, § 10209, *supra*) to its employee with regard to the exercise of the conversion right under a group life insurance policy. In direct contradiction with appellant's proposition, the cases agree that where an employee terminates[2] the employment by his own act, the employer is not required to give the employee notice of the termination of employment (*Waltz* v. *Equitable Life Assurance Society of U. S.* (1958) 233 S.C. 210 [104 S.E.2d 384]; *Pearson* v. *Equitable Life Assur. Soc.* (1938) 212 N.C. 731 [194 S.E. 661]; *Young* v. *Minton* (1934) 49 Ga.App. 545 [176 S.E. 662]; 68 A.L.R.2d, § 84, p. 133).

A case in point is *Johnson* v. *Travelers Ins.· Co.* (Mo.App. 1946) 194 S.W.2d 938. In that case, the insured employee retired on September 30, 1932, and, without exercising his conversion right within the allotted 30-day period, died in 1941. His beneficiary under a group life and disability insurance policy sued the defendant contending that the insurance could not be terminated without notice to the employee. Rejecting plaintiff's contention, the court pointed out that the employee admitted that his employment was terminated on September 30, 1932. Since he knew that his employment was terminated and had all the information regarding his right to convert, the court held that no notice to him was required (p. 942). We note that *Walker* v. *Occidental Life Ins. Co., supra,* upon which appellant places her main reliance, does not contradict or negate the foregoing authorities and is clearly distinguishable from the case at bench. Thus, it must be stressed that in *Walker* the duty of notification was imposed upon the insurer due to an obligation arising out of an insurance contract, not upon an employer based on an alleged violation of an implied term of the employment contract. In fact, the court held in *Walker* that in the administration of group insurance policies the employer must be regarded as the agent of the insurer. Moreover, in *Walker* the termination date from

---

[2]Under an unbroken line of authorities, retirement of an employee constitutes a termination of employment within the meaning of such clause in a group policy, since its object clearly is to dissolve the relationship of employer and employee (68 A.L.R.2d, § 19, pp. 47-48, and authorities cited therein).

which the 31-day conversion period had to be computed was highly doubtful and, in fact, was hotly debated. Under those circumstances the court held that the employee was entitled to receive notice that the *employer* had terminated their relationship, setting forth the underlying reasons therefor as follows: "The rationale . . . is that the privilege of converting the policy regardless of an employee's physical condition is a valuable property right, that *it would be inequitable to hold that an employee may be deprived of this right without his knowledge* at the whim of the employer, and that *the inclusion of such a clause in the policy implies an intention that the employee should have knowledge of the precise date of termination of his employment*" (67 Cal.2d p. 523; italics added). By contrast, in the case at bench it was Hinckley, not the employer, who terminated the employment and the exact termination date was neither in doubt nor subject to any legitimate dispute. It follows, therefore, that in the case here presented *Walker* has no applicability at all.

(b) ▮▮▮ *Breach of Insurance Contract:* Appellant's additional contention that the failure to give Hinckley notice of his conversion right constituted a breach of the insurance contract cannot be upheld either. Although Insurance Code section 10209, subdivision (d), which was amended after *Walker* took effect in 1968, imposes upon the insurance carrier a duty to give the employee notice of the existence of the conversion right, it explicitly provides that if such notice was not given, the employee has a maximum of 91 days within which to exercise his option for conversion.[3] The record at hand, in turn, conclusively establishes that Hinckley

---

[3]The pertinent portions of Insurance Code section 10209 are set out as follows: "Except as provided by Sections 10203.5, 10203.6 and 10203.8, the policy shall contain a provision that the insurer will issue to the employer for delivery to the insured employee an individual certificate setting forth: . . .

"(b) A provision that *if the employment terminates* for any reason whatsoever *and the employee applies to the insurer within 31 days after such termination,* paying the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, *he is entitled, without producing evidence of insurability, to the issue* by the insurer *of any individual life policy in* any one of the forms, other than term insurance, customarily issued by the insurer. . . .

"(d) A provision that if the employee dies during the 31-day period within which he is entitled to have an individual policy issued to him in accordance with this section and before any such policy shall have become effective, the amount of life insurance which the employee is entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

"If any employee insured under a group life insurance policy delivered in this state becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of

terminated his employment with Bechtel by retiring from service on March 19, 1969, but notice of conversion was given only after his death by way of filing the original complaint nearly two years later, on March 18, 1971. Since neither the insured nor appellant gave notice within the 31-day period allowed by the insurance contract, nor did they give notice within the additional time prescribed by Insurance Code section 10209, subdivision (d), appellant is barred as a matter of law from recovery.

While appellant concedes that the insurance contract in question cannot be enforced if Insurance Code section 10209, subdivision (d), is applicable, she insists that said code section cannot be applied to the instant case because it would be tantamount to an unconstitutional impairment of contract rights.

We disagree. The cases are legion which hold that the police power of the state to regulate insurance business cannot be contracted away, and the economic interest of the state may justify the exercise of its continuing protective power notwithstanding interference with existing contracts (*Home Bldg. & L. Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 437 [78 L.Ed. 413, 428, 54 S.Ct. 231, 88 A.L.R. 1481]; *El Paso* v. *Simmons* (1965) 379 U.S. 497 [13 L.Ed.2d 446, 85 S.Ct. 577]; *Daniel* v. *Tyrrell & Garth Inv. Co.* (1936) 127 Tex. 213 [93 S.W.2d 372, 375]; *Mortgage Guarantee Co.* v. *Rogan* (S.D.Cal. 1941) 41 F.Supp. 932, 934, etc.). The test of the validity of such regulation is that it must reasonably relate to the public interest and may not be unduly discriminatory. ■ As our Supreme Court put it in *Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761]: "It is no longer open to question that the business of insurance is affected with a public interest. . . . Neither the company nor a policyholder has the inviolate rights that characterize private contracts. *The contract of the policyholder is subject to the reasonable exercise of the state's police power. The only restriction on the exercise of this power is*

---

application and payment of the first premium within the period specified in such policy, and *if such employee is not given notice of the existence of such right* at least 15 days prior to the expiration date of such period, *then,* in such event *the employee shall have an additional period within which to exercise such right,* but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy. *This additional period shall expire 25 days next after the employee is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy.* Written notice presented to the employee or mailed by the policyholder to the last-known address of the employee or mailed by the insurer to the last-known address of the employee as furnished by the policyholder shall constitute notice for the purpose of this section." (Italics added.)

*that the state's action shall be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory."* (Italics added.)

 Here, the statutory change effected by the 1968 amendment of Insurance Code section 10209, subdivision (d), provides a reasonable method for the elimination of lingering, uncertain claims, and is neither arbitrary nor improperly discriminatory. Moreover, the change complained of did not deprive the insured employee of an existing right. Rather, it resulted in a benefit to him by extending the original 31-day period allotted for conversion by an additional 60 days. Under these circumstances, appellant's claim that her contractual rights were impaired by the statutory amendment must be rejected.

We observe in passing that in view of our conclusion that California Western is not chargeable with a violation of the insurance contract, appellant's purported cause of action based on the theory that Bechtel breached the insurance contract in its capacity as the insurer's agent must automatically fail.

(c) *Negligence:* Although as a matter of legal theory the violation of a contractual duty may give rise to causes of action premised upon both breach of contract and negligence (*Eads* v. *Marks* (1952) 39 Cal.2d 807 [249 P.2d 257]; 35 Cal.Jur.2d, § 15, p. 500), it is well recognized that in order to establish a negligence cause of action three requirements must be met: (1) the existence of a duty on the part of defendant to protect the plaintiff from the injury complained of; (2) failure of the defendant to perform that duty; and (3) injury or damage to plaintiff proximately caused by such failure. When these three elements coexist, they constitute actionable negligence, but absence of, or failure to prove, any one of them is fatal to plaintiff's recovery (35 Cal.Jur.2d, § 9, p. 494). From what has been said earlier concerning the insufficiency of appellant's allegations and the required judicial notice of Insurance Code section 10209, it is apparent that in the case at bench appellant failed to establish that either Bechtel or California Western owed a duty to give Hinckley notice with respect to the exercise of the conversion privilege. In the absence of this essential element the purported cause of action for negligence cannot be sustained and an action based thereon is subject to dismissal (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513].)

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.