Filed 2/28/24  Zurich Am. Ins. Co. v. Old Republic General Ins. Corp. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, <br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>OLD REPUBLIC GENERAL INSURANCE CORPORATION,<br><br>　　　Defendant and Respondent. | A166715<br><br>(San Francisco County Super. Ct. No. CGC-21-592417) |

Appellant Zurich American Insurance Company (Zurich) sued Old Republic Insurance Corporation (Old Republic), seeking reimbursement for expenses Zurich expended in defending general contractor Martin McNerney Development Company (McNerney) in a construction defect lawsuit.  Zurich alleged Old Republic had a duty to defend McNerney in the underlying action because McNerney is an additional insured under insurances policies issued to subcontractor Broadway Mechanical Contractors, Inc. (Broadway).  Following a bench trial on stipulated facts, the court entered judgment in favor of Old Republic.  On appeal, Zurich argues the court erred in determining McNerney was not an additional insured under the Old Republic policies.  We affirm.

1

# BACKGROUND[1]

## *The Project and Related Subcontract Between McNerney and Broadway*

In 2004, McNerney entered into a construction contract with 418 Jessie Historic Properties, LLC to perform seismic upgrades and tenant improvements for condominiums on Jessie Street in San Francisco, now commonly known as Mint Plaza (project).

In April 2006, McNerney and Broadway entered into a "Subcontract Agreement" (agreement or subcontract) under which Broadway was to perform plumbing work at the project. Under the "General Subcontract Provisions" the agreement required Broadway to maintain general liability insurance naming McNerney as an additional insured for work performed on the project, including completed operations. The insurance clause provided, in part, as follows:

"A. INSURANCE — SUBCONTRACTOR shall at all times carry on all operations hereunder, Worker's Compensation Insurance covering all of its employees, Public Liability and Property Damage Insurance and Automotive Public Liability and Property Damage Insurance, including liability coverage for (a) all operations, (b) subcontract work, (c) contractual obligations, (d) product or completed operations, (e) all owned vehicles, (f) non-owned vehicles, in forms, amounts and underwritten by insurance companies satisfactory to CONTRACTOR. . . . The SUBCONTRACTOR shall, at his own expense, maintain in effect at all times during the performance of the work, for or on behalf of [McNerney] Workers' Compensation insurance and General Liability insurance. The General

---

[1] The facts we recite are not in dispute. The case was submitted for trial on a written stipulation executed between the parties.

2

Liability insurance shall . . . carry a minimum of $1,000,000 limit of liability on an each occurrence basis including Products/Completed Operations, and $2,000,000 general aggregate. All Subcontractor's policies shall name [McNerney] as additional insured . . . . [McNerney] . . . its officers and employees are to be covered as insureds with respect to liability arising out of automobiles owned, leased, hired or borrowed by or on behalf of subcontractor, and with respect to liability arising out of work or operations performed by or on behalf of the subcontractor . . . including materials, parts or equipment furnished in connection with such work or operations. SUBCONTRACTOR shall maintain all of the foregoing insurance coverages in force until the work under this Agreement is fully completed. The requirement for carrying the foregoing insurance shall not derogate from the provisions for indemnification of CONTRACTOR by SUBCONTRACTOR under paragraph B of this Agreement."

The subcontract also required Broadway to indemnify and hold McNerney harmless with respect to all claims for damage to property arising out of work performed by Broadway. The indemnity clause provided, in part, as follows:

"B.    GENERAL INDEMNITY — All work covered by this Agreement done at the site of construction or in preparing or delivering materials SUBCONTRACTOR exclusively. SUBCONTRACTOR shall, with respect to all work which is covered by or incidental to this contract, indemnify and hold CONTRACTOR . . . harmless from and against all claims, damages, losses and expenses including but not limited to attorneys' fees, awards, fines or judgments arising by reason of the  death or bodily injury to persons, injury to property . . . caused by, arising out of, connected with, or resulting from in whole or in part, the performance of the Work, regardless of whether or not

3

such liability, claim, damage, loss or expense was caused in part by any negligent act or omissions, whether active or passive by a party indemnified hereunder. . . . The indemnity obligations herein shall survive the termination of the Contract for any reason and shall survive the completion of the work on the project. . . . The SUBCONTRACTOR'S liability insurance shall provide coverage for the SUBCONTRACTOR'S obligations under this indemnification clause."

Broadway completed its work on the project in September 2007. Broadway issued a one-year warranty for its work on the project.

***Broadway's Insurance Policies***

Zurich insured Broadway under commercial general liability policies, which were in effect for one-year periods between September 2003 through September 2008 and again from September 2009 through September 2011.[2]

Old Republic insured Broadway under commercial general liability policies which were in effect for one-year periods between September 2011 and September 2016 (Old Republic policies). Each policy contained two "Additional Insured" endorsements, each with nearly identical language. One endorsement covers liability arising from Broadway's ongoing operations (ongoing operations endorsement),[3] while the other endorsement covers liability arising from Broadway's completed operations (completed operations

---

[2] Another insurance company that is no longer party to this action insured Broadway for the one-year period of September 29, 2008 until September 29, 2009.

[3] The ongoing operations endorsement provides coverage to the additional insured for damage caused by acts or omissions "in the performance of [Broadway's] operations for the additional insured." It expressly excludes coverage for damage "when [Broadway's] operations for [the additional insured] are completed."

4

endorsement).[4]  As it is undisputed Broadway had finished its work on the project long before the inception of the Old Republic policies, we limit the discussion to the completed operations endorsement.

The completed operations endorsement does not identify who is an additional insured.  Instead, it is a "blanket" endorsement that provides coverage for additional insured persons or organizations "where required by written contract, but only when coverage for completed operations is specifically required by that contract."  (Capitalization omitted.)  The endorsement further provides:  "[I]f coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured."

### Underlying Litigation

In 2016, the homeowners' association for the project sued developers, including McNerney, alleging construction defects.  The lawsuit alleged, among other things, plumbing defects and resulting damages that occurred at an unspecified time.  McNerney cross-complained against numerous subcontractors, including Broadway.  McNerney sought recovery from Broadway under the express indemnity provision of the subcontract.

In response to Broadway's tender, both Zurich and Old Republic defended Broadway in the construction action.  Zurich and Old Republic equally split defense expenses.

---

[4] The completed operations endorsement provides coverage to the additional insured for damages caused by Broadway's work performed for the additional insured and included in the " 'products-completed operations hazard.' "  The " 'products-completed operations hazard' " provides coverage for liability arising out of Broadway's work, with the exception of work that has not been completed.

Separate from the defense of Broadway, Zurich agreed to defend McNerney as an additional insured. Zurich paid in excess of $430,000 to defend McNerney in the construction action. Old Republic did not participate in McNerney's defense.

In 2018, the homeowners' association and Broadway reached a settlement. Zurich and Old Republic equally funded the settlement on behalf of Broadway. The two insurers also equally funded the settlement of McNerney's cross-complaint against Broadway.

Zurich brought this action, seeking reimbursement from Old Republic for an equitable share of McNerney's defense fees and costs. Zurich's complaint alleged four causes of action: declaratory relief, equitable contribution, equitable indemnity, and subrogation.

## DISCUSSION

The parties agree Zurich is entitled to relief only if it is able to establish McNerney is an additional insured under the Old Republic policies. (See, e.g., *Truck Ins. Exch. v. Uniguard Ins. Co.* (2000) 79 Cal.App.4th 966, 974 [equitable contribution exists only between carriers that insure same party].) The resolution of this issue does not involve the intricacies of the duty to defend, but rather the application of basic contract interpretation principles. Because the material facts are not in dispute, the resolution of that issue depends entirely on our interpretation of the Old Republic policies and the relevant contract between Broadway and McNerney, which is subject to our independent review.[5] (*Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* (2008) 163 Cal.App.4th 1387, 1391 [absent factual dispute,

_____

[5] For these reasons, Old Republic's argument in favor of substantial evidence review is without merit.

interpretation of contracts are questions of law reviewed de novo].) For the reasons that follow, we conclude McNerney is not an additional insured.

The usual rules of contract interpretation apply to insurance policies. (*Hervey v. Mercury Casualty Co.* (2010) 185 Cal.App.4th 954, 961.) The mutual intention of the contracting parties at the time the contract was formed governs. (Civ. Code, § 1636; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524.) We ascertain that intention solely from the written contract, if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647; *Hess*, at p. 524.) We consider the contract as a whole and construe the language in context, rather than interpret a provision in isolation. (Civ. Code, § 1641.) We interpret words in a contract in accordance with their ordinary and popular sense, unless the words are used in a technical sense, or a special meaning is given to them by usage. (Civ. Code, § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (Civ. Code, § 1638.)

In determining whether McNerney is an additional insured under the Old Republic policies, we first look to the terms of the completed operations endorsement. That endorsement does not specifically identify who is an additional insured. Instead, it defines an additional insured as a person or organization that Broadway "is required by contract or agreement" to name as an additional insured "but only when coverage for completed operations is specifically required by that contract." By using the present-tense phrase "is required," the completed operations endorsement requires an existing contractual obligation. Thus, for an organization to qualify as an additional insured, Broadway must have had an existing contractual obligation to name it as an additional insured while the Old Republic policies were in effect.

7

Having determined the meaning of the relevant policy language, we now turn to whether Broadway had a contractual obligation to name McNerney as an additional insured while the Old Republic policies were in effect. "When additional insured endorsements, by their own terms, depend on the existence of a written contract between the named insured and the additional insured, the contract is a significant circumstance in determining the objectively reasonable expectations of the additional insured." (*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1245.)

Pursuant to paragraph A of the general subcontract provisions, Broadway was required "at all times" to carry, among other things, liability coverage for "product or completed operations" and to name McNerney as an "additional insured . . . with respect to liability arising out of work or operations performed by [Broadway] . . . until the work under this Agreement is fully completed."

Old Republic argues any contractual obligation to extend "additional insured" coverage for McNerney ended in 2007, when Broadway completed its work on the project.[6] We agree. The subcontract clearly and unambiguously sets forth the period of time that Broadway was required to provide additional insured coverage for McNerney. Such coverage was to remain in effect "until the work under [the subcontract]" was "fully completed."

Zurich argues this interpretation renders the additional insured coverage illusory because by its very nature completed operations coverage applies to damage occurring *after* the completion of Broadway's work. Zurich asserts a more reasonable way to interpret the phrase "until the work under

_____

[6] We express no opinion regarding Old Republic's alternate argument that its blanket endorsements are limited to a specific policy year.

8

this Agreement is fully completed" is one "requiring the maintenance of insurance for a time period extending beyond the completion of the construction itself and through the statute of limitations on construction defect actions." Alternatively, Zurich contends another reasonable interpretation is the time limitation applies only to those types of insurance which would have been relevant to Broadway's ongoing operations—namely, workers' compensation and auto liability.

Obviously, the parties were free to insert such qualifying language, but they did not. The goal of contract interpretation is not to rewrite contracts to make different or better deals for the parties than they negotiated for themselves. (*Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164 (*Series AGI*).) "It is widely recognized that the courts are not at liberty to revise an agreement under the guise of construing it. Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves." (*Hinckley v. Bechtel Corp.* (1974) 41 Cal.App.3d 206, 210; see Code Civ. Proc., § 1858 ["the office of the Judge is . . . not to insert what has been omitted"]; *Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486 ["The court . . . cannot insert in the contract language which one of the parties now wishes were there"].)

Similarly lacking is Zurich's contention that Old Republic's interpretation of the phrase "until the work under this Agreement is fully completed" renders the indemnity provision moot. The separate indemnity provision in the subcontract supports, not undermines, the conclusion that Broadway's obligation to provide additional insured coverage for McNerney ceased when it concluded its work on the project. The inclusion of the phrase "shall survive the termination of the Contract and shall survive the

9

completion of the work on the project" in the indemnity provision establishes the parties knew how to unambiguously provide for the continuation of contractual obligations post-termination when that was their intent. (See *Series AGI, supra*, 217 Cal.App.4th at p. 164 ["courts assume that each party to a contract is alert to, and able to protect, his or her own best interests"].)

That the subcontract did not temporally limit the indemnity provision but did limit the defense provision, illustrates the two are not coextensive. The subcontract distinguished between the length of time Broadway was required to insure McNerney and the longer period of time it was required to insure *itself* for its indemnity obligation to McNerney. The last sentence of the insurance provision makes clear that the limited period of time Broadway was required to insure McNerney "shall not derogate" from its longer indemnity obligation.[7]

Relying on *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1360–1361, Zurich argues Old Republic's interpretation ignores the practical reality of complex construction defect cases, in which damage from a subcontractor's work often does not materialize until years after work has been completed. We have no quarrel with this characterization of construction defect cases. However, *Pardee* is readily distinguishable. Although, there, as here, the challenged insurance policies incepted after the construction project was completed (*id.* at p. 1345), this is where the similarities end. In *Pardee*, it was undisputed that the general contractor was an additional insured. (*Id.* at p. 1356.) The narrow issue

---

[7] The Old Republic policies reflect Broadway did insure itself for this longer indemnity obligation; Old Republic paid $25,000 to resolve the cross-complaint McNerney had filed against Broadway.

before the court was whether the additional insured endorsements explicitly excluded coverage for the subcontractors' completed operations.  (*Ibid.*)

Here, it is undisputed that the challenged policies provide completed operations coverage to additional insureds where required by contract.  We conclude the plain and unambiguous language of the completed operations endorsement and the related subcontract establish McNerney was not an additional insured under the Old Republic policies.

## DISPOSITION

The judgment is affirmed.  Old Republic is entitled to its costs on appeal.

11

_____
Mayfield, J.*

We concur:

_____
Stewart, P. J.

_____
Richman, J.

*Zurich American Insurance Company v. Old Republic Insurance Corporation*
(A166715)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.