Filed 1/6/25  Marriage of West CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of MICHAEL and KATHLEEN WEST. | 2d Civil No. B338843 (Super. Ct. No. D397233) (Ventura County) |
| MICHAEL WEST,    Respondent,  v.  KATHLEEN WEST,    Appellant. | |

Kathleen West (wife) appeals from the judgment in this action dissolving her 14-year marriage to Michael West (husband).  She contends: (1) the trial court erred in its interpretation of the prior temporary support order when it found

the *Ostler-Smith*[1] provision required husband to pay additional support on his annual stock awards, including restricted stock units (RSU) and performance stock units (PSU), upon "exercise" rather than upon "vesting"; (2) insufficient evidence supports the trial court's finding that she had the opportunity and ability to work; and (3) the trial court failed to satisfy its sua sponte duty to make a finding that "imputing income" to wife was in the children's best interest. We affirm.

*Facts and Procedural Background*

The parties were married in 2006 and separated in 2020. They had three children: a son born in 2006, a daughter born in 2008, and another daughter born in 2011. Wife has a bachelor's degree in social science from UC Irvine and a master's degree in landscape architecture from Cornell University. For most of the marriage, she was not employed outside the home but maintained her landscape architect's license in good standing. Husband is a highly compensated executive in the pharmaceutical industry.

In February 2020, husband filed a petition for dissolution of the marriage. At the time of separation, he was employed as a director of medical affairs for Horizon Therapeutics, a pharmaceutical company. His compensation included a base salary of $21,668 per month, plus discretionary annual bonuses and stock awards, including stock option grants, RSUs, and PSUs.

---

[1] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, held that spousal and child support awards may include both a percentage of the supporting spouse's wages and a percentage of the income he or she receives in the form of bonuses, dividends and other types of discretionary compensation.

In July 2020, wife filed a request for order seeking child and spousal support. Husband filed a response, requesting that child support be calculated based upon his base income with an *Ostler-Smith* provision for the payment of additional support if he received compensation above his base income. Wife filed a reply, in which she sought to have all of husband's income, including his bonus and stock awards, treated as "guaranteed income."

On August 24, 2020, the trial court conducted a hearing on the request for temporary support.

At the hearing, Ms. McFadden, counsel for husband, stated: "I guess the fundamental dispute over child support is that we believe it should be based upon my client's base income with a Smith-Ostler order for anything above and beyond that. He's a W-2 employee. What he earns is really straight forward. He does get a sizeable amount of money in bonus and various stock grants and that's all on his W-2 and on the statements we've provided as well."

Later, when discussing husband's income and expense declaration (I&E), the following exchange took place:

"Ms. McFadden: We wrote in stock grants variable.

"The Court: Okay. Are those employee stock options?

"[Husband]: A combination.

"Ms. McFadden: A combination of stock options and awards.

"The Court: All stock-based, right?

"Ms. McFadden: Yes, all stock. Well, I think. Yeah. The bonus is on the other one. The bonus is on line C. So, yes, that was the stock.

"The Court: Right.  Okay.  Okay.  Mr. Heicklen [wife's counsel], why wouldn't I Smith-Ostler the bonuses and the stock stuff?"

After further discussion, the following colloquy occurred:

"The Court:  Well, yeah. It can be variable because it's irregular amounts.  It can be variable because it comes in once a year as opposed to monthly.  It could be variable because a company might go out of business next month.  A lot of variables. I just always Smith-Ostler bonus income and - - that's what I do.

"Mr. Heicklen: Okay. I don't think it's difficult.  I think it's fair.  I think [wife] gets paid when [husband] gets paid.

"Ms. McFadden: We would agree, your Honor.

"The Court: He exercises a stock option, then [wife] gets paid.

"Ms. McFadden: That's been our position all along."

The trial court asked whether this agreement resolved everything.  The parties responded that it did not resolve attorneys' fees or temporary spousal support.  Husband argued that wife had no need for spousal support because she was living with her parents rent-free and received gifts of cash from them on a regular basis.  The trial court rejected his position but issued a *Gavron*[2] warning to wife.

The trial court ordered child and spousal support in accordance with the Dissomaster report that was received and initialed by the trial judge at the hearing.  The trial court

---

[2] A *Gavron* warning is a fair warning to the supported spouse that he or she is expected to become self-supporting.  (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55; *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.)

4

directed wife's counsel to prepare and serve a written order. No written order was submitted at that time.

On May 7, 2021, at the mandatory settlement conference, the trial court noticed that a final order after hearing had not been submitted and instructed wife's attorney to write the order up "today." Her attorney drafted the order, husband stipulated to it, and the trial court signed and entered the order the same day. The order directed husband to pay wife $3,283 per month as temporary spousal support. The order also required husband to pay $4,721 per month in temporary child support. At the bottom of the page, the box designated as "Other" was checked followed by the handwritten notation: "Bonus Wage Rpt Attached for Annual Bonuses." Attached to the order was the Dissomaster Report and an annual bonus wages report that were initialed by the trial judge at the August 24, 2020 hearing.

In April 2022, the parties reached an agreement regarding the division of their assets, which was memorialized in a memorandum of understanding. Pursuant to that agreement, the community property was valued at $2.17 million. Wife was awarded 50 percent of the community property, which included an equalizing payment of $332,458. Wife's separate property was valued at $1.38 million.

In January 2023, the matter proceeded to trial. In addition to determining permanent spousal support and child support, the trial court was asked to interpret and potentially make *nunc pro tunc* corrections to the temporary support order of May 7, 2021. The trial court heard testimony from the parties, as well as testimony from the parties' forensic accountants. Husband also presented expert testimony from Susan Miller, who conducted the vocational evaluation of wife. The parties submitted

5

documentary evidence, including various transcripts of the prior hearings.  The parties submitted closing trial briefs.

In August 2023, the trial court issued its proposed statement of decision.  Both parties filed objections.  The trial court subsequently issued an amended statement of decision, which became the final statement of decision.  In April 2024, judgment was entered thereon.

In its final statement of decision, the trial court ordered husband to pay wife $1,500 per month in spousal support, effective July 2022.  The trial court also ordered husband to pay wife $4,614 per month in child support plus 13 percent of the gross amount of any compensation he receives in excess of his base pay of $281,304 per year.  For grants or awards of stock or RSUs, he must pay the additional child support when the grant or award of stock vests.

Regarding the temporary court order of May 7, 2021, the trial court determined that (1) the order should have included an *Ostler-Smith* provision as to spousal and child support and it was "only because of poor draftsmanship" that it did not reflect the trial court's "actual order"; and (2) the order was intended to include an *Ostler-Smith* component to any vested stock or RSU grants, "but only if and when the vested stocks or RSU grants were exercised."

*Discussion*

Wife contends the trial court erred in interpreting the *Ostler-Smith* provision in the May 7, 2021 order because the term "wages" was deliberately used for the purpose of including all of husband's stock awards at the time of vesting.  She further contends that had the trial court properly interpreted the percentage order issued by the previous trial judge, she would

6

have received a total of $143,976 in additional support for 2021 and 2022.

Husband responds that wife's argument for reversal is unavailing because the provision expressly applies to "annual bonuses." He also contends that any uncertainty should be interpreted against wife because she is the party who drafted the order.

If a stipulated order is unambiguous, we review it de novo. (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 27.) "If an order is ambiguous, the reviewing court may examine the record for its scope and effect and may look at the circumstances of its making." (*Ibid*.) When the trial court considers conflicting extrinsic evidence to interpret an agreement, we review its findings for substantial evidence. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

Wife contends that this court should apply the de novo standard of review because the competent extrinsic evidence is undisputed. Husband does not clearly state which standard of review applies. We conclude wife's interpretation of the temporary order fails under either standard.

*Interpretation of the Temporary Support Order*

The order contained the phrase "Bonus Wage Rpt Attached for Annual Bonuses" and included the Dissomaster report and a table entitled, "Father Annual Bonus Wages Report." Wife contends the use of the term "Wages" was deliberate because (1) husband's W2, which was before the court, included the RSUs and PSUs as "wages" when they vested, and (2) everyone, including the trial judge, recognized that his W2 was the basis for the temporary support order. Wife contends harmonizing the

7

entire transcript with the facts above supports her interpretation. We disagree.

First, the plain language of the order expressly references the bonus wage report attached "for annual bonuses" not "vested stock awards." Wife's interpretation requires adding language to the provision that is not there and would significantly modify it in her favor. We are not at liberty to revise an agreement under the guise of construing it. (See *Hinckley v. Bechtel Corp.* (1974) 41 Cal.App.3d 206, 211.)

Second, the transcripts from the August 24, 2020 hearing cannot be "harmonized" with wife's interpretation. In discussing the need for the *Ostler-Smith* provision, the trial judge stated: "Well, yeah. It can be variable because it's irregular amounts. It can be variable because it comes in once a year as opposed to monthly. It could be variable because a company might go out of business next month. A lot of variables. I just always Smith-Ostler bonus income and - - that's what I do." Wife's attorney responded: "Okay. I don't think it's difficult. I think it's fair. I think [wife] gets paid when [husband] gets paid." Husband's attorney agreed stating, "That's been our position all along."

We reject wife's contention that the trial court "misinterpreted" the trial judge's "exercise a stock option" comment. Considering the plain language of the order, and construing the competent extrinsic evidence, we reach the same conclusion as the trial court.

Moreover, pursuant to the general rule of contract interpretation, any uncertainty should be interpreted most strongly against the party who caused the uncertainty to exist. Here, that is wife. (See Civ. Code, § 1654.)

*Imputation of Income*

8

Wife contends insufficient evidence supports the trial court's finding that she had the opportunity and ability to work because the expert testimony was inherently improbable, speculative, and lacked evidentiary support.

We review a trial court's imputation of income for abuse of discretion. (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079 (*Berger*).) We do not substitute our judgment for that of the trial court and instead determine only if any judge reasonably could have made such an order. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 994.) "[W]e consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.'" (*Berger*, at p. 1079.)

The Family Code[3] grants the trial court discretion to impute income to a parent based on his or her "earning capacity." (§ 4058, subd. (b).) However, "income cannot be imputed based upon a party's earning 'capacity' absent proof of *both* ability and opportunity to earn the income on a going-forward basis." (*Berger*, *supra*, 170 Cal.App.4th at p. 1079.)

Here, the trial court heard evidence from Susan Miller, a certified career counselor and vocational expert, who has worked on more than 3,000 cases. Ms. Miller met with wife in June 2021 and subsequently prepared a 26-page written report based on that evaluation.

Ms. Miller believed wife was "very articulate" and was "doing all the right things" to reenter the workforce as a landscape architect. For example, she was taking classes and was doing unpaid work for friends and neighbors as a landscape

---

[3] All statutory references are to the Family Code unless otherwise stated.

9

designer and architect to build her portfolio. Ms. Miller believed it would take wife about six to nine months to get up to date on the latest versions of the relevant software programs.

Ms. Miller testified that wife had the ability to work as a landscape designer or architect with an earning capacity of about $69,000 to $72,000 per year. Ms. Miller also testified that there were a number of possible job opportunities available to wife in 2021, 2022, and at the time of trial in 2023. As part of Ms. Miller's vocational evaluation, she considered various factors including wife's age, length of time she had been out of the workforce, and her ability to be competitive for the job openings. Ms. Miller also considered her custodial schedule with respect to the children.

Wife contends she was not qualified for any of the relevant jobs identified by Ms. Miller because she did not have the updated computer skills, she could not work until the divorce was resolved and her children were older, and Ms. Miller's "assumption" that she could complete her training in six to nine months was unrealistic and speculative based on her "actual experience."

But any conflict in the evidence is for the trial court to resolve. The statement of decision reflects that the trial court credited Ms. Miller's testimony. It also expressly found that the children, who were by then 17, 15, and 12, were "not an unreasonable impediment to wife obtaining employment."

We conclude sufficient evidence supports the trial court's decision to impute income to wife. Accordingly, there was no abuse of discretion.

*Best Interests of the Children*

10

Wife contends the trial court's decision on child support should be reversed because it did not make an express finding that imputation of income was in the children's best interest and "insufficient evidence supported as much anyways."

 A trial court's discretion to impute income to a parent for the purpose of calculating child support is circumscribed by the statutory requirement that the imputation be in the best interests of the children.  (§ 4058, subd. (b); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 301 (*Cheriton*).)

Here, the trial court was not required to make an "express" finding regarding the children's best interest.  (See *Cheriton*, *supra*, 92 Cal.App.4th at p. 301 [trial court made no express or implied finding that imputing income to custodial parent would be in children's best interest].)  Section 4058 simply provides that a court "may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children . . . ."  (*Id.*, subd. (b)(1)(B).)

Moreover, wife did not alert the trial court to any alleged deficiencies regarding the necessary findings for the imputation of income in the proposed statement of decision.  (See Code Civ. Proc., § 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)  We must therefore apply the doctrine of implied findings and presume the trial court made all factual findings necessary to support the judgment.  (See *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

Wife responds that the trial court's findings (even implied) were not supported by substantial evidence.  For example, she contends that imputing income to her results in less support and the costs of raising children increase as they age.  She reiterates that she has 100 percent physical and legal custody of two of the

11

couple's three children and details numerous parenting obligations that require her time.

But the trial court was aware of the facts in this case. Indeed, it could reasonably have concluded that imputing income to wife, a highly educated and licensed landscape architect, would incentivize her to obtain a paying position, particularly given that she had been doing unpaid landscaping design work for friends.

We conclude substantial evidence supports the trial court's implied "best interests" finding. Its decision to impute income to wife was therefore not an abuse of discretion.

Based on the foregoing, wife has not demonstrated prejudice. Reversal is not warranted.

### Disposition

The judgment is affirmed. Husband is entitled to his costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

Rocky Baio, Judge

Superior Court County of Ventura

_____

Dennis Temko, for Appellant.

Ferguson Case Orr Paterson and Wendy C. Lascher, John A. Hribar, for Respondent.